**No. 25-3379**

---

UNITED STATES COURT OF APPEALS
EIGHTH CIRCUIT

---

STEPHEN PARR,
*Plaintiff-Appellant*,

v.

UNION PACIFIC RAILROAD CO.,
*Defendant-Appellee.*

---

Appeal from the United States District Court for the Western District of Missouri,
No. 4:24-cv-94-SRB
Hon. Steven R. Bough, presiding

---

# REPLY BRIEF OF PLAINTIFF-APPELLANT

---


Sean E. Soyars
Charles W. Armbruster, III
Jonathan S. Jones
SCHLICHTER BOGARD LLC
100 South Fourth Street, Suite 1200
Saint Louis, Missouri 63102
(314) 621-6115

*Attorneys for Plaintiff-Appellant*

**CONTENTS**

Authorities ........ ii

Argument ........ 1

I. Instruction 12 erroneously required Plaintiff to prove that Defendant "intentionally retaliated" against him and warrants a new trial. ........ 1

A. The Court does not defer to a district court's legal errors or presume that such errors are consistent with a verdict. ........ 1

B. *Murray* is on point and did not limit its holding to Sarbanes-Oxley cases. ........ 3

C. As shown by the Second Circuit's panel decision in *Ziparo*, a panel of this Court can and should conclude that *Murray* abrogates *Kuduk*. ........ 7

D. Instruction 12 went beyond requiring proof of "intent" and imposed the very burden that *Murray* condemned. ........ 9

E. Defendant does not dispute that the proper remedy is a new trial. ........ 14

II. Defendant fails to refute that additional errors warrant a new trial. ........ 15

A. Instruction 13 misled the jury in deciding pretext. ........ 15

1. Dicta in *Blackorby II* does not salvage Instruction 13. ........ 15

2. Defendant's cases endorsing a "business-judgment" instruction are inapposite. ........ 17

3. Defendant does not dispute that the proper remedy is a new trial. ........ 23

B. Defendant fails to justify the trial court's temporal limitation. ........ 24

Conclusion ........ 27

Certificates of Compliance ........ 28

Certificate of Service ........ 28

## AUTHORITIES

### Cases

*Babb v. Wilkie*,
589 U.S. 399 (2020)........................................................................................ 7

*Bauer v. Curators of the Univ. of Mo.*,
680 F.3d 1043 (8th Cir. 2012) ........................................................ 19, 20, 21, 23

*Blackorby v. BNSF Ry. Co.*,
936 F.3d 733 (8th Cir. 2019) ................................................................. 14, 15, 19

*Blackorby v. BNSF Ry.*,
849 F.3d 716 (8th Cir. 2017) ................................................................... 5, 13, 14

*Bostock v. Clayton County*,
590 U. S. 644 (2020).......................................................................................... 7

*Bouaphakeo v. Tyson Foods, Inc.*,
214 F. Supp. 3d 748 (N.D. Iowa 2016)................................................................ 2

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ........................................................................... 25

*DeJesus v. WP Co. LLC*,
841 F.3d 527 (D.C. Cir. 2016)........................................................................... 23

*Haffke v. Signal 88, Ltd. Liab. Co.*,
306 Neb. 625, 947 N.W.2d 103 (2020) ............................................................. 22

*Hess v. Union Pac. R.R. Co.*,
898 F.3d 852 (8th Cir. 2018) ...................................................................... 22, 23

*Huff v. Buttigieg*,
42 F.4th 638 (7th Cir. 2022) ............................................................................. 23

*James v. CSX Transp. Inc.*,
No. 15-204, 2017 WL 2471828, 2017 U.S. Dist. LEXIS 143640 (M.D. Ga. Feb. 21, 2017) ................................................................................. 17, 18, 19

*Kuduk v. BNSF Ry. Co.*,
768 F.3d 786 (8th Cir. 2014) ............................................... 3, 5, 8, 14, 24, 25, 26

*McCullough v. AEGON USA, Inc.*,
585 F.3d 1082 (8th Cir. 2009) ........................................................................ 8

*Murray v. UBS Sec., LLC*,
43 F.4th 254 (2d Cir. 2022), *rev'd*, 601 U.S. 23 (2024) .................................. 4, 6

*Murray v. UBS Sec., LLC*,
601 U.S. 23 (2024)...................................................................... 3, 6, 7, 9, 10, 12

*Phenix Fed. Sav. & Loan Ass'n, F.A. v. Shearson Loeb Rhoades, Inc.*,
856 F.2d 1125 (8th Cir. 1988) ........................................................................ 1

*Salve Regina College v. Russell*,
499 U.S. 225 (1991)........................................................................................ 1

*Simpson v. Merchants & Planters Bank*,
441 F.3d 572 (8th Cir. 2006) ........................................................................ 20

*Smiley v. Gary Crossley Ford, Inc.*,
859 F.3d 545 (8th Cir. 2017) .......................................................................... 3

*Stemmons v. Missouri Dep't of Corr.*,
82 F.3d 817 (8th Cir. 1996) .......................................................................... 19

*Texas Dept. of Community Affairs v. Burdine*,
450 U.S. 248 (1981)...................................................................................... 23

*Tompkins v. Metro-North Commuter R.R. Co.*,
983 F.3d 74 (2d Cir. 2020) ......................................................................... 4, 8

*United States v. Anderson*,
771 F.3d 1064 (8th Cir. 2014) ........................................................................ 8

*United States v. Kirk*,
528 F.3d 1102 (8th Cir. 2008) ...................................................................... 15

*United States v. Lunsford*,
725 F.3d 859 (8th Cir. 2013) ........................................................................ 16

*United States v. McAdory*,
501 F.3d 868 (8th Cir. 2007) ........................................................................ 15

*Veronese v. Lucasfilm Ltd.*,
212 Cal. App. 4th 1, 151 Cal. Rptr. 3d 41 (2012)............................................ 22

*Walker v. AT & T Tech.,*
995 F.2d 846 (8th Cir. 1993) ........................................................................ 19

*Wexler v. White's Fine Furniture*,
317 F.3d 564 (6th Cir. 2003) ....................................................................... 23

*Ziparo v. CSX Transp., Inc.*,
160 F.4th 314 (2d Cir. 2025) ........................................................ 3, 6, 7, 8, 21

**Statutes**

18 U.S.C. § 1514A......................................................................................... 5, 6

18 U.S.C. § 1514A(a) .................................................................................... 6, 7

49 U.S.C. § 20109(b)(1)(A).............................................................................. 6, 7

49 U.S.C. § 20109(d)(2) ..................................................................................... 20

49 U.S.C. § 42121(b)(2)(B)(i) ........................................................................... 11

49 U.S.C. § 42121(b)(2)(B)(ii) .......................................................................... 20

**Rules**

Fed. R. Civ. P. 61 ............................................................................................. 19

## ARGUMENT

### I. Instruction 12 erroneously required Plaintiff to prove that Defendant "intentionally retaliated" against him and warrants a new trial.

#### A. The Court does not defer to a district court's legal errors or presume that such errors are consistent with a verdict.

Defendant misstates the standard of review in two ways.

*First*, while Defendant concedes that "legal questions embedded in jury instructions are reviewed de novo," it contends in the same sentence that "the standard is deferential." Br. 12. That is wrong. "When *de novo* review is compelled, no form of appellate deference is acceptable." *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991). A reviewing court does not defer to a lower court's legal conclusions.

*Second*, Defendant contends that "jury verdicts carry a 'heavy presumption of regularity,' and courts are to construe the instructions and verdict consistently with one another." Br. 12–13 (quoting *Phenix Fed. Sav. & Loan Ass'n, F.A. v. Shearson Loeb Rhoades, Inc.*, 856 F.2d 1125, 1128–29 (8th Cir. 1988)). Defendants wrench this quote from a different context to misleadingly assert that *Phenix* addressed instructional error. It did not. *Phenix* involved a challenge to the sufficiency of evidence. 856 F.2d at 1128.[1] In that context, the presumption of regularity required

[1] A later section of the opinion notes that the appellant waived an alleged instructional error by failing to raise it in the trial court, and the error was not so "egregiously wrong" to rise to the level of plain error. *Id*. at 1130–31. The presumed regularity of jury verdicts was not part of the analysis.

upholding the verdict if "reasonable minds" could accept the evidence as adequate and required the Court to resolve *factual* ambiguities in favor of the verdict. *Id*. at 1128–29. The Court said nothing about a presumption of regularity negating instructional error.

Defendant similarly asserts that "[c]ourts evaluating jury instructions must, where possible, construe them in a manner that respects and upholds the jury's verdict." Br. 18 (citing *Bouaphakeo v. Tyson Foods, Inc.*, 214 F. Supp. 3d 748, 751 (N.D. Iowa 2016)). Again, the cited case did not involve instructional error. The issue was whether the jury followed a *legally correct* instruction to exclude uninjured class members from a damages award. *See Bouaphakeo*, 214 F. Supp. 3d at 751 (noting the Supreme Court had cited the instruction with approval). In that context, it was appropriate for the court to presume that the jury had properly limited damages by adhering to the legally valid instructions, thereby construing the verdict as consistent with the instructions. *Id*. at 753–54 (instructions supported conclusion that jury's award was limited to "injured" members).[2] The court did not suggest that it could have properly adopted a tortured interpretation of an erroneous instruction so as to "construe" it in a manner that would be consistent with the verdict.

[2] The defendant also had invited the ambiguity by objecting to bifurcation and failing to keep lawful records. *Id*. at 754. In contrast, Plaintiff squarely objected to Instruction 12. *See* Plaintiff's Opening Br. 13–14.

Accordingly, Defendant's cases merely show that where the jury was correctly instructed on the law, ambiguities in a verdict are resolved in favor of the verdict. These cases do not support Defendant's suggestion that a court can presume that an erroneous instruction did not affect the verdict so as to "construe" the instructions as being consistent with the verdict. If anything, the presumption of regularity weighs in favor of presuming that the jury followed the law as instructed, even if the error is ambiguous. *See Smiley v. Gary Crossley Ford, Inc.*, 859 F.3d 545, 555 (8th Cir. 2017) ("The jury is presumed to follow the court's instructions.").

Here, Instruction 12 improperly imposed a heightened burden by requiring Plaintiff to prove that Defendant intentionally retaliated against him. Defendant's efforts to defend the propriety of Instruction 12 fail for the following reasons.

### B. *Murray* is on point and did not limit its holding to Sarbanes-Oxley cases.

The Second Circuit recently concluded that the Supreme Court's decision in *Murray v. UBS Sec., LLC*, 601 U.S. 23 (2024) had abrogated its FRSA precedent that relied on this Court's decision in *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786 (8th Cir. 2014). Plaintiff's Opening Br. 14–16; *see Ziparo v. CSX Transp., Inc.*, 160 F.4th 314, 323, 333–37 (2d Cir. 2025). Defendant nevertheless contends that *Murray* is "inapposite" because the case came out of the Second Circuit, and the Supreme Court supposedly made a "careful and deliberate" choice to limit its holding to claims under the Sarbanes-Oxley Act. Br. 16–17. These arguments fail.

Defendant first attempts to distinguish *Murray* on the ground that it struck down a heightened burden under Second Circuit but "not Eighth Circuit law." Br. 16 (discussing *Murray v. UBS Sec., LLC*, 43 F.4th 254, 257–58 (2d Cir. 2022), *rev'd*, 601 U.S. 23 (2024)). Defendant contends that the Second Circuit's decision differs from Instruction 12 because the court there ordered a new trial on the ground that the jury instructions did not require the plaintiff "to demonstrate 'discriminatory animus,' – *i.e.*, that he 'was a victim of intentional retaliation prompted by [the employee's] protected activity.'" Br. 16 (quoting *Murray*, 43 F.4th at 261–62).

Far from distinguishing Second Circuit law, the heightened burden imposed by the Second Circuit was drawn from this Court's decision in *Kuduk*. In concluding that the Sarbanes-Oxley plaintiff had to prove intentional retaliation, the Second Circuit relied on its "identical interpretation of the *FRSA* antiretaliation provision" in *Tompkins*, while citing *Kuduk* and other FRSA precedents as further support. *Murray*, 43 F.4th at 261 & n.7 (emphasis added). And *Tompkins*' identical interpretation of the FRSA explicitly relied on *Kuduk*. *Tompkins v. Metro-North Commuter R.R. Co.*, 983 F.3d 74, 82 & n.30 (2d Cir. 2020) (agreeing with the "*Eighth Circuit[]*" and that "some evidence of retaliatory intent" is required for an FRSA claim because the "'the essence of [such a] tort is "discriminatory animus,"' which in turn requires the employee to prove that she was the victim of 'intentional

retaliation prompted by [her] . . . protected activity.'") (quoting *Kuduk*, 768 F.3d at 791) (emphasis added).

The Eighth Circuit model instructions forming the basis for Instruction 12 explicitly quote the same language from *Kuduk*. Plaintiff's Opening Br. 17–18; 8th Cir. Manual of Model Civ. Jury Instrs. at 18-6, Notes on Use ¶ 4 (2025). And in *Blackorby I*, an FRSA case, this Court reversed for a new trial because the instructions had omitted the intentional retaliation element—exactly what the Second Circuit did in *Murray*. *Blackorby v. BNSF Ry.*, 849 F.3d 716, 719, 722 (8th Cir. 2017) (given *Kuduk*'s holding that "the 'essence' of the FRSA's employee-protections provision is 'discriminatory animus,'" district court committed reversible error "when it instructed the jury that Blackorby need not establish intentional retaliation.") (quoting *Kuduk*, 768 F.3d at 791). Thus, the burden that the Second Circuit imposed and the Supreme Court rejected in *Murray* was derived from and is indistinguishable from that imposed by *Kuduk* and Instruction 12.

Defendant next claims that the Supreme Court "confined" the decision "exclusively" to Sarbanes-Oxley claims (those arising under 18 U.S.C. § 1514A) and "declined" to address other statutes incorporating the AIR 21 framework. Br. 17–18. Conspicuously absent from this section of the brief is a single quotation from the opinion. If the Court had, in fact, imposed a "careful and deliberate limitation" on the scope of the opinion as Defendant claims, surely Defendant

could identify some language to that effect. Surely the Second Circuit would have acknowledged such a limitation in *Ziparo* when overruling its FRSA precedent based on *Murray*. Given the Supreme Court's acknowledgement that the Second Circuit had relied on "its recent 'interpretation of nearly identical language in the [FRSA],'" *Murray*, 601 U.S. at 31 (quoting 43 F.4th at 260), surely the Court would have said so explicitly if for some reason its holding did not apply to the FRSA.

In fact, the claimed limitation to Sarbanes-Oxley claims does not exist. Although the question arose in the context of a claim under 18 U.S.C. § 1514A, nothing in the opinion suggests that the holding would not apply equally to the "series of similar whistleblower statutes" incorporating the AIR 21 causation standard. *See id.* at 28; *cf. Ziparo*, 160 F.4th at 323 ("[B]ecause both the FRSA and [Sarbanes-Oxley] incorporate the same [AIR 21] burden-shifting framework and contributing-factor causation standard . . . , *Murray*'s reasoning binds us here with equal force.").

Defendant does not even try to identify any material difference in the language of the Sarbanes-Oxley and FRSA antiretaliation provisions that could conceivably alter the analysis. There is none. *See* Plaintiff's Opening Br. 12–13 (quoting nearly identical language of 18 U.S.C. § 1514A(a) and 49 U.S.C. § 20109(b)(1)(A)). Both state that an employer shall not in any way "discriminate" against an employee for

protected activities. 18 U.S.C. § 1514A(a); 49 U.S.C. § 20109(b)(1)(A). In concluding that "the word 'discriminate'" does not "inherently require[] retaliatory intent," the Court looked to cases under the Age Discrimination in Employment Act (*Babb v. Wilkie*, 589 U.S. 399 (2020)) and Title VII (*Bostock v. Clayton County*, 590 U. S. 644 (2020)), *not* Sarbanes-Oxley. *Murray*, 601 U.S. at 34. Thus, Defendant's theory that *Murray* turned on some idiosyncratic feature of 18 U.S.C. § 1514A(a) misses the mark. Defendant suggests no reason that the unqualified conclusion in *Murray* that a "'retaliatory intent' requirement is simply absent from the definition of the word 'discriminate'" would not also apply to the meaning of the same word in 49 U.S.C. § 20109(b)(1)(A). As the Second Circuit put it, there is no way to reconcile FRSA precedents requiring a plaintiff to prove retaliatory intent or animus with *Murray*'s holding that the word "discriminate" does not require such a showing. *Ziparo*, 160 F.4th at 333, 335.

In short, Defendant's effort to show that *Murray* is "inapposite" fails.

### C. As shown by the Second Circuit's panel decision in *Ziparo*, a panel of this Court can and should conclude that *Murray* abrogates *Kuduk*.

Defendant asserts that a panel cannot properly hold that *Murray* has abrogated *Kuduk*'s intentional retaliation requirement. Br. 22–23. Tellingly, Defendant relies on the *Fourth Circuit's* formulation of the prior panel rule (precedent remains binding unless "impossible to reconcile" with intervening Supreme Court decision), but cites no comparable Eighth Circuit precedent. *Id*. An Eighth Circuit

panel is not bound by a prior opinion "if an intervening Supreme Court decision is inconsistent with the prior opinion," *McCullough v. AEGON USA, Inc.*, 585 F.3d 1082, 1085 (8th Cir. 2009), or "when the earlier panel decision is cast into doubt by an intervening Supreme Court decision," *United States v. Anderson*, 771 F.3d 1064, 1067 (8th Cir. 2014). *Kuduk* is certainly "inconsistent with" and "cast into doubt by" *Murray* for the reasons explained here and in *Ziparo*. *See supra*, pp. 3–7; Plaintiff's Opening Br. 14–19; *Ziparo*, 160 F.4th at 335–37.

Even if the Fourth Circuit's higher "impossible to reconcile" standard applied, Defendant does not explain how to reconcile *Kuduk*'s intentional retaliation requirement with *Murray*'s holding that no such burden applies. The Second Circuit concluded that its own FRSA precedent—which adopted *Kuduk*—could not be reconciled with *Murray*. *Ziparo*, 160 F.4th at 335–37. Defendant simply urges the Court not to follow *Ziparo* by reverting to the mistaken argument that Second Circuit law supposedly imposed a higher burden than *Kuduk* by requiring proof of "animus." Br. 23–24. As noted, *supra* p. 4, Defendant ignores that the Second Circuit in *Tompkins* **explicitly adopted the *Kuduk* standard** in finding that "'*discriminatory animus*'" is part of an FRSA claim. *Tompkins*, 983 F.3d at 82 & n.30 (agreeing with the "**Eighth Circuit[]**" and quoting *Kuduk*, 768 F.3d at 791) (emphasis added). The same "animus" requirement that the Second Circuit derived from *Kuduk* is baked into Instruction 12. *See* 8th Cir. Model Instrs. at 18-6, Notes

on Use ¶ 4. Thus, Defendant's assertion that *Kuduk* and *Tompkins* (overruled in *Ziparo*) are "not similarly situated" is simply wrong—*Tompkins* **relied on** *Kuduk*.

Aside from the false contention that Second Circuit law imposed a heightened "animus" requirement that *Kuduk* does not, Defendant makes no argument that *Ziparo* is otherwise distinguishable or wrongly decided. Given that *Kuduk*'s intentional retaliation requirement will inevitably be overruled based on *Murray*, Defendant's position that the panel should decline to do so would unnecessarily burden the docket of the en banc Court or Supreme Court and create an unnecessary split with the Second Circuit. Although Defendant stresses the significance of Eighth Circuit jurisprudence, it is critically important that this Court respect Congress's policy judgment that "'personnel actions against employees should quite simply not be based on protected [whistleblowing] activities'—not even a little bit." *Murray*, 601 U.S. at 36–37 (citation omitted). *Kuduk*'s intentional retaliation requirement contravenes that judgment and should be promptly overruled.

### D. Instruction 12 went beyond requiring proof of "intent" and imposed the very burden that *Murray* condemned.

Unable to show that *Murray* is "inapposite," Defendant contends Instruction 12 complied with *Murray* because "intent" is still required and Instruction 12 merely "equated intentional retaliation with the contributing factor standard" rather than imposing an additional element. Br. 18–22. Defendant is wrong.

As the majority opinion in *Murray* explains:

> The Second Circuit was wrong when it held that the word "discriminate" in the statute's catchall provision imposes an additional requirement that the whistleblower plaintiff prove the employer's "retaliatory intent" or animus. Accepting that the word "discriminate" is relevant to the intent inquiry, *the only intent that §1514A requires is the intent to take some adverse employment action against the whistleblowing employee "because of" his protected whistleblowing activity*. The statute is clear that whether an employer "discriminated" in that sense has to be resolved through the contributing-factor burden-shifting framework that applies to Sarbanes-Oxley whistleblower claims.

*Murray*, 601 U.S. at 35 (emphasis added). Thus, while "intent" is still at issue, adverse employment actions by their nature are intentional acts; they are not mere accidents due to negligence. An employer *necessarily* acts intentionally when it discharges, demotes, suspends, or takes some other adverse employment action. *See Murray*, 601 U.S. at 40 (Alito, J., concurring) ("[A] discriminatory discharge that is made 'because of' a particular factor necessarily involves an intentional choice in which that factor plays some role in the employer's thinking.").

Determining whether the employer took the adverse action "because of" the protected activity "has to be resolved through the contributing-factor burden-shifting framework that applies to" such claims. *Murray*, 601 U.S. at 35. "Burden-shifting frameworks have long provided a mechanism for getting at intent in employment discrimination cases, and the contributing-factor burden-shifting framework is meant to be more lenient than most." *Id*. at 35. "The burden-shifting

framework provides a means of getting at intent, and Congress here has decided that the plaintiff's burden on intent is simply to show that the protected activity was a 'contributing factor in the unfavorable personnel action.'" *Id*. at 36 (quoting 49 U.S.C. § 42121(b)(2)(B)(i)). The Second Circuit erred by attempting "to make 'retaliatory intent' a requirement for satisfaction of the 'contributing factor' element." *Id*. at 37.

At the trial in *Murray*, "the burden-shifting framework worked as it should." *Id*. After hearing both sides of the story, the jury "determined that Murray had shown that his protected activity was a contributing factor in his firing while UBS had not shown that it would have taken the same action in the absence of his protected activity." *Id*. "That burden shifting—and not some separate, heavier burden on the plaintiff to show 'retaliatory intent'—is what the statute requires." *Id*.

Here, Instruction 12 imposed the very burden that *Murray* condemned. Plaintiff's only burden on intent was "simply to show that the protected activity was a 'contributing factor in the unfavorable personnel action.'" *Id*. at 36 (quoting 49 U.S.C. § 42121(b)(2)(B)(i)). Plaintiff's proposed instruction would have complied with that holding. App. 164, R. Doc. 83 at 19. The proposed instruction would have allowed Plaintiff to satisfy his burden on intent by proving that he was subject to an unfavorable personnel action—firing, an intentional act—and

showing that his protected safety reporting was a contributing factor to Defendant's decision. *Id*. Instruction 12 went beyond that by requiring Plaintiff to prove not only that his protected safety reporting was a contributing factor, but also imposing the separate, heavier burden to show that Defendant "intentionally retaliated" against him. App. 299, R. Doc. 124 at 13. That is the same error made by the Second Circuit and rejected in *Murray*. 601 U.S. at 37.

Defendant's efforts to defend Instruction 12 fail. *First*, Defendant contends that since the "intentionally retaliated" element was in the same paragraph as the contributing-factor standard, the instruction merely "equated" the two rather than imposing "a separate, additional element." Br. 19. This elevates form over substance. Defendant essentially advocates a rule that a legal error can be ignored so long as it is part of "one integrated question" with a valid element instead of being set out in a separate paragraph. Br. 20. Defendant cites no authority supporting that view, and nothing in *Murray* supports it. The fourth paragraph required Plaintiff to prove *both* that Defendant (1) "intentionally retaliated" against him, and (2) that his protected safety reporting was a contributing factor in that decision. App. 299, R. Doc. 124 at 13. *Murray* makes clear that Plaintiff's burden should have been limited to the latter, which Plaintiff's proposed instruction would have done. 601 U.S. at 36 ("[T]he plaintiff's burden on intent is simply to show

that the protected activity was a 'contributing factor in the unfavorable personnel action.'"); *see* App. 164, R. Doc. 83 at 19. Instruction 12 went beyond that burden.

Defendant's position that the Court should ignore the "intentional retaliation" language because it is essentially a synonym for the contributing-factor standard cannot be squared with *Blackorby I*. As noted, the Court there held that instructions that included the contributing-factor standard but *omitted* an "intentional retaliation" element did not "fairly and adequately represent" *Kuduk*'s holding "that a showing of intentional retaliation *is* required" under the FRSA, and remanded for a new trial. *Blackorby I*, 849 F.3d at 722 (emphasis added). If "intentional retaliation" was nothing more than the equivalent of the contributing-factor standard as Defendant contends, omitting it would not have been legal error in *Blackorby*, let alone required a new trial. Given *Blackorby*'s holding that the omission of "intentional retaliation" language was reversible error under then-controlling law, *including* such language was necessarily also reversible error here after *Murray*.

*Second*, Defendant suggests that the "intentional retaliation" language should not be read to mean "discriminatory animus." Br. 20. But the Model Instructions make clear that the phrase "intentionally retaliated" in Instruction 12 is based on *Kuduk*'s holding that the essence of the underlying tort is "discriminatory animus":

> The contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity.

> *Kuduk v. BNSF Ry. Co*., 768 F.3d 786, 791 (8th Cir. 2014); *Blackorby v. BNSF Ry. Co*., 849 F.3d 716, 721 (8th Cir. 2017) . . . The FRSA's employee-protections provision is based on "discriminatory animus"; as such, a showing of intentional retaliation is required. *Blackorby*, 849 F.3d at 722 (quoting *Kuduk*, 768 F.3d at 791).

8th Cir. Manual of Model Civ. Jury Instrs. at 18-6, Notes on Use ¶ 4 (2025). Because "intentionally retaliated" as used in Instruction 12 incorporates "discriminatory animus," Defendant's assertion that Instruction 12 did not require such a showing, thus distinguishing the burden imposed by the Second Circuit in *Murray*, is simply wrong. Br. 19–20.

**E. Defendant does not dispute that the proper remedy is a new trial.**

Aside from an undeveloped and conclusory assertion that the jury's finding "would survive" a corrected instruction (Br. 20–21), Defendant does not respond to Plaintiff's argument that the error was prejudicial because Instruction 12 presented close factual questions. *See* Plaintiff's Opening Br. 19–21 (citing *Blackorby v. BNSF Ry. Co.*, 936 F.3d 733, 738–39 (8th Cir. 2019) (*Blackorby II*)). Although Defendant seeks to distinguish *Blackorby II* on the basis that the instruction there required proof of an additional element and the instruction here did not (which is wrong for the reasons discussed, *supra*, pp. 12–14), Defendant does not contend that any error was harmless due to "overwhelming evidence" in its favor. *Cf. Blackorby II*, 936 F.3d at 738–39. Thus, Defendant does not contest that the proper remedy for any error in Instruction 12 is a new trial. *See United States v. Kirk*, 528

F.3d 1102, 1104 n.2 (8th Cir. 2008) ("[U]ndeveloped issues perfunctorily adverted to in an appellate brief are waived.") (quoting *United States v. McAdory*, 501 F.3d 868, 870 n.3 (8th Cir. 2007)).

## II. Defendant fails to refute that additional errors warrant a new trial.

### A. Instruction 13 misled the jury in deciding pretext.

#### 1. Dicta in *Blackorby II* does not salvage Instruction 13.

Defendant fails to rebut Plaintiff's showing that *Blackorby*'s characterization of the business-judgment instruction in that case was non-binding dicta. *See* Plaintiff's Opening Br. 23–25. Defendant contends that "[t]o fully adjudicate the plaintiff's assigned error" in *Blackorby II*, "the court was required to analyze *both* sentences of Instruction 17." Br. 27. That is plainly wrong. Because the error in the second sentence alone was enough to require a new trial, the Court's commentary on the first sentence was superfluous and wholly unnecessary to the decision. Far from being "integral to the court's reasoning," *id*., that portion of the opinion could have been deleted entirely without changing the result or substance of the opinion. That makes the commentary on the business-judgment sentence non-binding dicta.

Defendant also fails to address two other indicia of dicta. *First*, the opinion cited no authority supporting a business-judgment instruction under the FRSA. *Blackorby II*, 936 F.3d at 737. *Second*, the Court's statement that it was addressing the first sentence "[t]o the extent" plaintiff challenged it, *id*., while including no similar qualification as to the second sentence, unmistakably suggests that the

plaintiff had *not* made specific arguments squarely challenging the business-judgment portion. *Cf. United States v. Lunsford*, 725 F.3d 859, 864 (8th Cir. 2013) (statement in prior opinion made without briefing or adversarial presentation "was dicta that is not binding in a future case . . . that squarely raises the issue").

Defendant notes that the ultimate issue is not "whether the business judgment rule should be given in every FRSA case," but "whether the district court abused its discretion in giving the instruction in *this* case." Br. 28. That is true but misses the point. The *district court* misread *Blackorby II* as having "signed off" on the propriety of a business-judgment instruction in FRSA cases, regardless of case-specific circumstances. R. Doc. 143, Tr. 622:23–623:5, 623:14–16. Even assuming *Blackorby II*'s statement is not dicta, the district court's conclusion that a business-judgment instruction is always appropriate in FRSA cases under *Blackorby II* goes too far. While such an instruction may be "unobjectionable" when the critical issue is mixed motives rather than pretext as in *Blackorby II*, it does not follow that the same instruction is "unobjectionable" when pretext *is* at issue, as here. Plaintiff's Br. 24–25. Blind adherence to *Blackorby II* while failing to account for case-specific circumstances is what establishes that "the district court abused its discretion in giving the instruction in *this* case." Defendant's Br. 28.

### 2. Defendant's cases endorsing a "business-judgment" instruction are inapposite.

Defendant asserts that a business-judgment instruction is compatible with the FRSA. Br. 28. But the weakness of its position is exposed by its inability to muster any relevant authority. The sole support for Defendant's assertion that "the Eighth Circuit is not alone in giving the [business-judgment] instruction in FRSA anti-retaliation cases" is a single district court case. Br. 28–29 (citing *James v. CSX Transp. Inc.*, No. 15-204, 2017 WL 2471828, at *12, 2017 U.S. Dist. LEXIS 143640, at *36 (M.D. Ga. Feb. 21, 2017)). Even this lone citation does not support Defendant's argument.

*First*, the *James* instruction does not resemble the instruction in this case. The *James* instruction informed jurors that if the railroad proved that it would have taken the disciplinary action even in the absence of protected activity, then they should not find against the railroad "*just* because you disagree with its decision or its reasons." *Id*. (emphasis added). That tracks the Eighth Circuit's model Title VII instruction that jurors may not find for the plaintiff "just because you might disagree with the defendant's (decision) or believe it to be harsh or unreasonable." 8th Cir. Civ. Jury Instr. 5.02; *see* Plaintiff's Opening Br. 27. In contrast, the language of Instruction 13 was a blanket prohibition on considering the reasonableness of Defendant's conduct for any purpose whatsoever. App. 300, R. Doc. 124 at 14. That was improper because reasonableness goes to the question of

pretext. Plaintiff's Opening Br. 28–29 & n.8 (collecting numerous published appellate cases).

*Second*, the *James* instruction was only implicated in the context of the railroad's heavy burden of showing by clear and convincing evidence that it would have taken the same action regardless of the employee's protected activity. 2017 U.S. Dist. LEXIS 143640, at *36. In contrast, Instruction 13 immediately followed Instruction 12 regarding Plaintiff's prima facie case and the issue of pretext, *before* any instruction on Defendant's burden. App. 299–300, R. Doc. 124 at 13–14.

*Third*, the *James* district court interpreted the instruction as *removing* the railroad's business judgment from the jury's consideration. 2017 U.S. Dist. LEXIS 143640, at *36 ("[T]he reasonableness of CSXT's business judgment was not at issue."). In contrast, Instruction 13 *injected* the issue by essentially creating a business-judgment defense with no basis in the FRSA.

Defendant further notes that the *James* plaintiff prevailed despite the jury receiving a "business judgment" instruction that "'precluded'" it "from considering evidence relevant to pretext." Br. 29. This argument again depends on the mistaken premise that the *James* instruction was similar to Instruction 13 in completely barring consideration of reasonableness, which is wrong for the reasons just discussed. But even assuming *arguendo* the *James* instruction was no different from Instruction 13, the fact that the plaintiff prevailed despite an improper

business-judgment instruction merely shows that some instructional errors are ultimately harmless. *See* Fed. R. Civ. P. 61. Indeed, the fact that the jury awarded $5 million in punitive damages, *James*, 2017 U.S. Dist. LEXIS 143640, at *3, shows that the evidence of misconduct was overwhelming and thus sufficient to overcome any heightened burden of proof. *Cf. Blackorby II*, 936 F.3d at 738–39 ("misallocated burden of proof" may be deemed harmless if "overwhelming evidence" favors appellee). The fact that a single FRSA plaintiff with a particularly strong case prevailed despite an improper instruction does not remotely show that a business-judgment instruction is "compatible" with the FRSA generally.

Given the lack of FRSA authority supporting its argument, Defendant turns to other types of cases, such as Title VII, which have approved business-judgment instructions. Br. 29–30 (citing *Stemmons v. Missouri Dep't of Corr.*, 82 F.3d 817, 819 (8th Cir. 1996), and *Walker v. AT & T Tech.*, 995 F.2d 846, 849 (8th Cir. 1993)). No one disputes this. Plaintiff already acknowledged that a business-judgment instruction must be given on request in Title VII cases. *See* Plaintiff's Opening Br. 26. Defendant ignores that the *reason* such an instruction must be given is that the burden of proof under Title VII "always remains with the plaintiff" and "'an employer is 'entitled to make its own subjective personnel decisions . . . for any reason that is not discriminatory.'" *Bauer v. Curators of the Univ. of Mo.*, 680 F.3d 1043, 1045–46 (8th Cir. 2012) (quoting *Walker*, 995 F.2d at

849).[3] That logic does not translate to statutes such as the Equal Pay Act, which like the FRSA, places the burden on the employer to prove that the protected factor played no role in the discriminatory action. *Id.* The same reasons that a business-judgment instruction has no place in an EPA case apply fully to the FRSA. Plaintiff's Opening Br. 26–27.

Defendant's effort to distinguish the EPA fails. Defendant notes that the EPA does not require proof of discriminatory intent, while the FRSA requires proof that protected activity was a contributing factor to the adverse personnel action. Br. 33. Even assuming an FRSA plaintiff bears a materially higher burden than an EPA plaintiff, *Bauer* focused on the *employer's* burden in rejecting a business-judgment instruction in EPA cases. 680 F.3d at 1045–46. The EPA places the burden on the employer "to prove that the pay differential was based on a factor other than sex." *Id*. at 1046 (quoting *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 579 (8th Cir. 2006)). While "a Title VII defendant need only articulate a defense," that is not enough to sustain an EPA defendant's burden. *Id*. at 1045–46. The FRSA likewise shifts the burden to the employer to prove by clear and convincing evidence that the protected factor played no role in the adverse action. 49 U.S.C. §§ 20109(d)(2), 42121(b)(2)(B)(ii). It is not enough under the FRSA "merely to

---

[3] Defendant's citation to the Seventh Circuit's model instructions for Title VII cases is similarly inapposite.

articulate some legitimate business reason for the employment action." *Ziparo*, 160 F.4th at 331. Thus, the same reasons that *Bauer* cited for rejecting a business-judgment instruction in EPA cases apply fully here. Defendant completely fails to address this point.

Defendant notes that the erroneous instruction in *Bauer* was ultimately deemed harmless because it "limited the jury from ruling for Bauer *solely* for irrelevant reasons that are not in the preceding three instructions." Br. 33–34 (quoting *Bauer*, 680 F.3d at 1046). Although Defendant asserts that "[t]he same is true in this case," the relevant language shows otherwise. The challenged instruction in *Bauer* was like *James*. It stated: "You may not return a verdict for the plaintiff *just because* you might disagree with the defendant's decision or believe it to be harsh or unreasonable." *Bauer*, 680 F.3d at 1044 (emphasis added); *see* 8th Cir. Civ. Jury Instr. 5.02. In contrast, Instruction 13 did not prohibit the jury from finding liability based "solely" on disagreement or a belief that the firing was harsh or unreasonable—it precluded the jury from considering the reasonableness of Defendant's conduct *at all*. App. 300, R. Doc. 124 at 14. Thus, even if a business-judgment instruction is compatible with the FRSA generally, the district court's formulation here was nevertheless improper and prejudicial. *See* Plaintiff's Opening Br. 27–30.

Defendant's cases from other jurisdictions similarly involved instructions that prohibited a liability finding *solely* for irrelevant reasons, rather than a blanket prohibition on considering reasonableness, as here. *Haffke v. Signal 88, Ltd. Liab. Co.*, 306 Neb. 625, 632, 947 N.W.2d 103, 111 (2020) ("You may not return a verdict for the Plaintiff *just because* you might disagree with the Defendant's decision . . . or believe it to be harsh or unreasonable.") (emphasis added); *Veronese v. Lucasfilm Ltd.*, 212 Cal. App. 4th 1, 20, 151 Cal. Rptr. 3d 41, 55 (2012) ("You may not find that [employer] discriminated or retaliated against [employee] based upon a belief that [defendant] made a wrong or unfair decision. Likewise, you cannot find liability for discrimination or retaliation if you find that [defendant] made an error in business judgment.").

Defendant notes that the jury could properly consider the temporal proximity of the adverse action and protected activity without having to decide whether Defendant's action was wise, reasonable, or fair. Br. 33. This misstates the issue, and ignores the factors cited in Plaintiff's brief. *See* Plaintiff's Opening Br. 27–28 (noting that relevant factors include "indications of pretext such as inconsistent application of policies and shifting explanations.") (quoting *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 858 (8th Cir. 2018)). Plaintiff does not contend that the jury should have been required to decide whether Defendant's decision was, *in fact*, reasonable. But the jury should have been permitted to *consider* whether

Defendant's conduct was reasonable in evaluating the factual question of pretext. Temporal proximity aside, Defendant fails to explain how a jury could properly consider whether Defendant had "inconsistent application of policies" or "shifting explanations," *Hess*, 898 F.3d at 858, while simultaneously being barred from considering whether Defendant acted reasonably in applying its policies or explaining its decisions. An unreasonable explanation or policy application shows a lack of credibility and is evidence of pretext. *See, e.g.*, *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Huff v. Buttigieg*, 42 F.4th 638, 648 (7th Cir. 2022); *DeJesus v. WP Co. LLC*, 841 F.3d 527, 534 (D.C. Cir. 2016); *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576–77 (6th Cir. 2003). Yet Instruction 13 told the jury not to concern itself with reasonableness. App. 300, R. Doc. 124 at 14. That was misleading and incompatible with the jury's task in deciding pretext.

**3. Defendant does not dispute that the proper remedy is a new trial.**

Defendant's sole harmless error argument is that Instruction 13 is similar to the challenged instruction in *Bauer*. Br. 33–34. That argument fails because the instruction here was not similar to *Bauer*. *See supra*, p. 21. Defendant does not respond to Plaintiff's argument that he was prejudiced because defense counsel repeatedly highlighted Instruction 13 in urging the jury not "to even think about" whether various aspects of Defendant's conduct were reasonable. *See* Plaintiff's

Opening Br. 30–31. Accordingly, as with Instruction 12, Defendant does not dispute that the proper remedy for any error is a new trial. *See supra*, p. 14.

**B. Defendant fails to justify the trial court's temporal limitation.**

Defendant's own general manager (Coleman Bell) admitted at trial that "all the history" of Plaintiff's conduct since he began employment in 2015 was a factor in the events that led to his termination. R. Doc. 143, Tr. 589:6–9, 597:24–599:13, 600:14–16. Yet the district court limited Plaintiff's claim to a three-month period starting in December 2022, App. 299, R. Doc. 124 at 13, thereby precluding the jury from considering whether Plaintiff's extensive safety reporting activities before that date "affect[ed] in any way the outcome of the decision" to fire Plaintiff, *Kuduk*, 768 F.3d at 791. Defendant contends that the December 2022 cutoff is consistent with limitations set forth in "Plaintiff's own allegations and testimony." Br. 34–36. Both arguments are meritless.

Defendant first cites the Complaint's allegation that Plaintiff "reported safety concerns to [Defendant's] Values Lines between December 20, 2022 and February 11, 2023." Br. 34 (quoting Compl. ¶ 13, App. 15, R. Doc. 1 at 3). Defendant misrepresents this allegation. In full, paragraph 13 states: "At the disciplinary hearing, ***Defendant introduced evidence*** that Parr reported safety concerns to its Values Lines between December 20, 2022 and February 11, 2023." Compl. 13, App. 15, R. Doc. 1 at 3 (emphasis added). And Defendant ignores the further

allegation that "[a]lthough Defendant claims to have fired Parr for misconduct allegedly occurring on February 27, 2023, it fired him because he made safety reports too frequently." Compl. ¶ 17, App. 16, R. Doc. 1 at 4. "[T]he complaint should be read as a whole, not parsed piece by piece." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). Read in context, the date range in paragraph 13 is merely reciting what *Defendant claimed* to be the basis for Plaintiff's firing, while surrounding allegations clarified that Plaintiff was claiming that the true reason that Defendant fired him was his safety reporting before that date. Accordingly, Defendant's assertion that Plaintiff's own allegations limited his claim to the December 2022–February 2023 period misstates the record.

Defendant also misconstrues Plaintiff's testimony, which merely states that he was not disciplined *at that time* for his safety reporting in a given year. R. Doc. 142, Tr. 317:8–15 ("Q: So you reported all these safety concerns in 2018. . . . ***At no time in 2018***, were you fired, were you demoted, were you disciplined, any of those things related to any of these safety hotlines, were you? A: I don't recall, but I don't think so.") (emphasis added); Tr. 318:9–13 (Plaintiff was not formally disciplined for submitting "167 safety reports" "[b]efore this December '22" meeting). That testimony cannot reasonably be interpreted as disclaiming that the 167 safety reports that Plaintiff submitted before December 2022 "affect[ed] in any way the outcome of the decision" to fire Plaintiff on April 14, 2023. *Kuduk*, 768

F.3d at 791. To the contrary, while Plaintiff agreed that he had not been formally disciplined "on paper" before December 2022, he testified that he was "verbally" disciplined and "chewed out" by his superiors for having made safety reports. R. Doc. 142, Tr. 317:16–318:8. The clear import of this testimony is that Plaintiff alleged that his safety reports before December 2022 were indeed a contributing factor to Defendant's decision to fire him in April 2023.

Defendant further challenges Plaintiff's portrayal of Mr. Bell's testimony as "cherry-picked snippets," and counters that another portion of the testimony can be read as showing "that the decision to initiate disciplinary proceedings stemmed from Plaintiff's actions after the December 2022 letter of counsel was issued." Br. 35 (citing R. Doc. 143, Tr. 599:14–601:2). The cited page includes Mr. Bell admitting that "[a]ll of this in its entirety," and "[e]verything that's going on has an impact on this." Tr. 600:14–16. And in any event, the conflicting or ambiguous nature of the testimony simply proves Plaintiff's point that whether Plaintiff's protected activities before December 2022 "affect[ed] in any way the outcome" was a question for the jury. *Kuduk*, 768 F.3d at 791. The date range imposed by the district court took the question away from the jury by effectively granting judgment as a matter of law for any claim based on events before that date.

Defendant cites Exhibit 11 but fails to counter Plaintiff's point that Defendant compiled this exhibit to support its pretextual claim that Plaintiff was being fired

for violating restrictions in the December 2022 letter. *See* Plaintiff's Opening Br. 33. And Defendant mischaracterizes the statements of Plaintiff's counsel, which objected to the date limitation because "[t]he jury heard a lot of evidence of safety reporting outside of December of 2022," and it should be left "to the jury to decide what safety reporting was a contributing factor, if any." R. Doc. 143, Tr. 616:9–17.

In short, Defendant fails to justify the improper date limitation, which warrants a new trial.

## CONCLUSION

The Court should vacate the judgment and remand for a new trial.

May 27, 2026

Respectfully submitted,


/s/ *Sean E. Soyars*
Sean E. Soyars
Charles W. Armbruster, III
Jonathan S. Jones
SCHLICHTER BOGARD LLC
100 South Fourth Street, Suite 1200
Saint Louis, Missouri 63102
(314) 621-6115

*Attorneys for Plaintiff-Appellant*

## CERTIFICATES OF COMPLIANCE

1. I certify that this brief contains 6,445 words, excluding the parts exempted by Fed. R. App. P. 32(f), and thus complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B).

2. In compliance with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

/s/ *Sean E. Soyars*
Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I certify that on May 27, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Sean E. Soyars*
Attorney for Plaintiff-Appellant